## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

IN RE:  KENNETH LAMAR JARRETT, SR.*            BK# 17-11112-SDR
          DEBTOR            *            CHAPTER 13

### BRIEF

The Court has heretofore read from the bench Findings of Fact and Conclusions of Law pursuant to FRBP 7052.  It has invited counsel to respond with additional considerations in light of this Court's ruling in the case of *In Re Melinda Darlene Pursley,* 1:17-bk-10732-SDR (Bankr. E.D. Tn, 2017).  Specifically, the Court requested counsel to estimate the expected services to be rendered and state why.

### SIGNIFICANT RELEVANT FACTORS

This Court referenced Local Rule 2016-1(b)(1) which rule applies in a Chapter 13 flat fee request, "The flat fee request must be based on the attorney's good faith estimate of the services to be rendered in the case, the attorney's hourly rate for such services, and the other factors listed in 11 U.S.C. §330(a)(3) and (4).  In setting the fees the attorney should also take into account the total plan payments, and the expected dividend to unsecured creditors."

The rule references 11 U.S.C. §330(a)(3) and (4), which provides a laundry list of considerations in determining the attorney fee.  Most of §330(a)(3) addressed issues that are presently no longer at issue.  There appears to be no question about necessity of services because we are looking at prospective fees and services.  In addition the rate of compensation is no longer at issue because the rate has been ruled upon when the Court observed Counsel has 32 years of consumer bankruptcy experience, is board certified, and the Court approved the base hourly rate of $320.00 per hour.

What has not yet been addressed in the §330(a)(3) laundry list is that the laundry list itself is not an **exhaustive** list of considerations. The "court shall consider…taking into account **all relevant factors, including….**11 U.S.C. §330(a)(3)." We shall endeavor to explain relevant factors that were considered in estimating the time and fee to be put into the case.

The significant relevant factors to be taken into account include: (1) Debtor's circumstances; (2) history of bankruptcies and forecast of future problems; and (3) the innovative and expensive technologies invested into computer programs which make Debtor's counsel's staff to be efficient and precise. Counsel cannot say with certainty what the future holds, but looking at the past is the best we have to predict the future.

### (1) DEBTOR'S CIRCUMSTANCES

Debtor is now 67 years old. Debtor has a high Body Mass Index and the medical problems that are often associated therewith. Debtor's first heart attack occurred at approximately age 52 in 2002. At that time he had five heart bypasses via open heart surgery.

Debtor's next heart attack was in 2010. Debtor had three stints following that heart attack. In 2015 Debtor had his third heart attack.

The Debtor is an insulin dependent diabetic which causes various medical complications. He has diabetic neuropathy. Debtor has deteriorating back and hip issues. He has discussed hip surgery with his physician. Debtor has substantial risks for surgery associated with his weak heart and uncertainty of wound healing due to his diabetes. The surgery issue looms on the horizon if the steroid shots he just received a couple of weeks ago in his back and hips for chronic pain do not continue to perform well. His high BMI, his heart problems, and wound care due to his diabetes are all working against him. We

expect there to be future medical bills. We don't know what policies will be effectuated from Washington D.C. as it relates to health care reform. We don't know if Debtor will have acute needs arise during the donut hole.

He is dependent on family for helping him to function day to day. For example, Debtor can no longer drive, so he is paying the lien against the vehicle his relative drives to take care of Debtor. This makes Debtor vulnerable to the personal issues of his caregiver, such as criminal charges and his need of counsel. Losing his son would be disastrous. Debtor will have to make adjustments if his son leaves or can no longer assist him.

### (2) HISTORY OF BANKRUPTCIES AND FORECAST OF FUTURE PROBLEMS

This Court in its announced finding easily correlated the first two cases were directly related to the Debtor's health problems. The additional observation is the second Chapter 13 case had more loans than medicals because, as is often the case, many medical debts arise by the Debtor paying his deductible and copays with his income and then he took out debt to cover living expenses. The other instance is the loans are medical bill consolidation loans. What is most telling, and a heavy consideration for justifying the fee request, is that in the second case, #15-13532, Debtor's case was a real nightmare to administer. From that case, time records reflect the following:

      9/15/2015 - §341 meeting

      9/22/2015 - §341 meeting

      10/8/2015 – Objection to Confirmation

      12/10/2015 – De Novo Review of Confirmation

      5/6/2016 – Office conference regarding modified plan

    6/7/2016 - §341 Modified Plan

    6/23/2016 – Objection to Confirmation of Modified Plan

    8/4/2016 – Objection to Confirmation of Modified Plan

    1/19/2017 – Trustee's Motion to Dismiss

    2/9/17 – Trustee's Motion to Dismiss – case dismissed

   This case only lasted 19 months yet it required nine hearings prepared for by counsel and with appearances in court, plus a long office conference.  A skeptic might say it was only one modified plan with confirmation, one §341 meeting with a modified plan and one Motion to Dismiss.  In fact, it was nine hearings in a case that lasted only 19 months!  In evaluating his circumstances of a chronically sick man who is vulnerable to the needs of his family, this writer and Ms. Whaley anticipated there are going to be many future issues to cope with.

   If the current 36 month plan maintained the same rate of hearings, that would result in 17 hearings in the current case!  At this rate, if the case were 60 months long there would be 28 hearings!  Just those hearings alone would be, conservatively, $4,400.00 in attorney appearances alone, not considering the preparation time for those hearings.

   One would expect with problems in the future we would fight to keep the case going because another Chapter 13 case would be very difficult to get confirmed.  Also, Debtor may not obtain a Chapter 7 discharge until August 17, 2021.  Nobody wants an ill patient to be bombarded with creditor harassment.  **Parenthetically, in consideration of the lack of availability of a discharge in this case, Debtor agreed to extend the length of the plan term until August 29, 2021.  This increases the dividend by $3,600.00.**

### (3) INNOVATIVE AND EXPENSIVE TECHNOLOGIES SHOULD BE ENCOURAGED

There is no secret that the technological world is exploding.  The use of technology is broader than merely moving from a typewriter to a computer.  It's more than moving from five-page carbon page forms to Bestcase Bankruptcy.  It has now moved to the stage of movement away from paper files to sophisticated Law Office Management programs.  This office has stayed ahead of the curve with a superb office management program (ProLaw, by WestLaw), which makes the office more efficient and enables us to give better customer service with fewer employees.  Extensive software program add-ons have enhanced its utility.

Debtor submits that pursuant to §330(a)(3), "all relevant factors" may be forward thinking to consider software.  Compensation rules may be interpreted narrowly, but may also be read expansively to encourage technological efficiency and accuracy.

For example, it would not be a far stretch to think within a few years an integrated robot scanner which combines the services of a paralegal could read an incoming client's billing statements and simultaneously input them into bankruptcy petition software and then store the PDF statements into the office case management system.  A task that previously might have taken 20 minutes would then take ZERO human being time.  Is that time not compensable?  Debtor suggests to a lesser degree this technological leferage is already in place.

For example, in the *Pursley* case recently decided by this Court, Debtor's very capable attorney and paralegal submitted records on various acts in the *Pursley* brief, *In re Pursley*, 1:17—bk-10732-SDR (E.D. Tn, 2017).  In that case, the 2/21/2017 entries reflected the traditional way to practice law.  It is the wonderful method this writer used

for years until the technology advanced. Two entries demonstrate this example: "Receive and review 341 Meeting of Creditors notice, 0.50 hrs." Also "Draft letter to client advising of date and time of 341 Meeting of Creditors and calendar 341 Meeting of Creditors in database, 0.30 hrs". These two transactions were billed at a total of 0.8 hrs.

      This office would do the same transactions through our Prolaw software much more quickly. The office manager/Paralegal would open the email of the §341 notice and drag it into the Prolaw client case file. The date of the §341 notice would be noted, and the nature of the hearing would be coded in. That entire process would take less than 60 seconds. At that time, any person in the office could see that timestamped event had been documented. Therefore, anyone who answered the phone with a call such as from a creditor calling in would have a copy of the document at their desk with §341 meeting information. The e-mail is then forwarded to the receptionist who maintains the manual backup docket journal, who then makes a manual entry of the calendar event date. That takes one to two minutes. At a time in the future, the receptionist would open a query box and in an upcoming hearing date for which reminder notices are due, the system would instantly generate a report of all the cases coming up on a given date and with one button, all the clients of that date would have their personalized letters generated and they would print.

      That entire process would take less than two minutes to generate an entire court day's correspondence of reminder notices. The longest part is merely stuffing letters and applying postage.

      For the purposes of our office, the human time expense has been made much more efficient. In our system, 30 bankruptcy hearings could be logged into our system and letters mailed out in less than an hour (not including letter stuffing and mailing).

These issues are important. With less stress on the mundane, we can focus on bigger issues. Mr. Rannick's and Ms. Whaley's time is mostly spent in true lawyer work, but much of the volume work that other firms do by hand (and bill handsomely for) churn out work the old-fashioned way. We bill quality time for intentional matters. Administrative details are a de minimus portion of our billable time.

Notwithstanding all these efficiencies, our actual time to date with two objections to claims are yet $1,771.00 (see attached Prolaw account pages). The presumptive no-look fee upon dismissal is $1,750.00 (E.D. Tn LBR 2016-1(d)). The Trustee's proposal of a modicum for years of work is not reasonable.

Respectfully Submitted:

KENNETH C. RANNICK

/s/ Kenneth C. Rannick
Attorney for Debtor, #11106
4416 Brainerd Road
Chattanooga, TN 37411
423/624-4002 telephone
423/624-0509 facsimile
rannick@lawyerchattanooga.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been served upon the Debtors and the Trustee by placing the same in the United States Mail with sufficient postage thereupon to carry it to its destination, dated this 31st day of October, 2017.

/s/ Kenneth C. Rannick
Kenneth C. Rannick

Chapter 13 Trustee, kara.west@trustee13.com

Jerrold Farinash, Attorney for Trustee, jdf@fandhlawfirm.com